UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**DAMIAN ORLOWSKI, et al.,**

    **Plaintiffs on behalf of themselves
and all other similarly situated,**

v.                                             No. 2:11-cv-01396-JPM-cmc
                                                   JURY DEMANDED

**LARRY BATES, et al.**

    **Defendants.**

### JOINT EMERGENCY *EX PARTE* MOTION OF RECEIVER AND PLAINTIFFS FOR PREJUDGMENT ATTACHMENT

COME NOW, John L. Ryder, as the Receiver for First American Monetary Consultants, Inc. and FAMC PM, LLC (together "FAMC"), and Plaintiffs, and jointly move the Court pursuant to Federal Rule of Civil Procedure 64 and Tenn. Code Ann. § 29-6-101 *et seq*. and the principals of equity applicable to judicial receiverships in Federal Court for entry of an *ex parte* order of pre-judgment attachment and lien in favor of the Receivership Entities and Plaintiffs, against Individual Defendants Larry Bates, Charles Bates, and Robert Bates, permitting the Receiver and/or Plaintiffs to seize any and all monies, safes, personal property, vehicles, tools, equipment, and other tangible assets located on any property owned or controlled by these Individual Defendants. In support of this Motion, the Receiver and Plaintiffs respectfully state and would show to the Court as follows.

On October 14, 2013, the Court entered a restraining order (D.E. 120), prohibiting Individual Defendants Larry Bates, Charles Bates, Robert Bates and Barbara Bates from "removing, hiding, transfer, dissipation, or spending of monies, property and/or assets . . . owned

by Defendants, held by Defendants, or that any Defendant has access to, or has intentionally placed in the name of another in an effort to prevent or otherwise impair Plaintiffs' ability to be made whole in connection with this lawsuit . . . and enjoin[ing] all Defendants from (A) transferring, changing, wasting, dissipating, converting, concealing, or otherwise disposing of, in any manner, funds, assets, claims, or other property, whether tangible or intangible, or assets owned or controlled by, or in the possession or custody of these Defendants, and (B) from transferring, assigning, selling, hypothecating, or otherwise disposing of any assets of FAMC, Inc., FAMC PM, LLC, IRN USA, Inc., any individual Defendant, or any related entity or subsidiary of any Defendant."

The Restraining Order was subsequently converted to a preliminary injunction and extended to include Kinsey Bates and Cindy Standley on March 21, 2014 (D.E. 243). In the Court's March 21, 2014 Order, the Court restated all previous injunctive provisions applicable to all Defendants, including Robert Bates, Charles Bates, and Larry Bates.

The Receiver was appointed on October 21, 2013 (D.E. 123), and was authorized, among other things, "to take all actions reasonable and necessary to protect and maximize the assets of the Receivership Entities" and "to trace, recover, and marshal the assets of the Receivership Entities and/or the assets of the Plaintiffs." (D.E. 123 ¶¶ 6, 7).

On August 4, 2015, a federal grand jury issued an indictment against Defendants Larry Bates, Charles Bates and Robert Bates, Case No. 2:15-cr-20192-SHL-1 (the "Indicted Defendants"). Defendants Barbara Bates, Kinsey Bates and Cindy Standley (the "Unindicted Defendants") were not indicted. The Receiver and Plaintiffs believe that, in the face of the indictment, the Indicted Defendants individually, or in concert with the Unindicted Defendants and others not yet known to Plaintiffs and Receiver, will remove themselves and/or assets

directly or indirectly traceable to funds received by FAMC from customers from the jurisdiction of the Court, or sell, transfer, dissipate or otherwise seek defeat the claim of the Plaintiffs and the Receivership Estate to assets that were purchased with funds of or traceable to the Receivership Entities.

As the Receiver has reported to the Court, the Receiver cannot account for or locate thousands of dollars in coins and/or monies allegedly "ordered" by FAMC with customer funds. Over the course of his investigation, the Receiver has discovered that Dr. Bates kept coins at his house and traveled domestically and internationally with a supply of coins. Plaintiffs obtained testimony that Robert Bates and/or Charles Bates had access to coins and/or funds (Deposition of Ryder, D.E. 433).

In literature distributed by FAMC, in seminars, and in television and radio appearances, Dr. Bates advocated keeping a cache of precious metals buried or hidden close at hand so that the coins could be easily accessed at times of crisis, termed "midnight gardening."

The Receiver is aware of two large safes located in a barn on Dr. Bates' property and a safe located in the basement of Chuck Bates' home. The Receiver has not inventoried these safes or been provided an inventory of the contents. Dr. Bates represented to the Receiver that they contain firearms. In the barn, there are industrial sized freezers full of frozen meat—a hiding place for coins, secured in PVC pipe and wrapped, recommended by Dr. Bates.

The Receiver previously filed a Verified Motion for Pre-Judgment Attachment (D.E. 359); however, the Receiver withdrew this motion (D.E. 371), without prejudice, to conduct additional investigation regarding trades and transfers of the property identified in the motion. Nevertheless, upon information and belief, much of the personal property identified in the Motion for Pre-Judgment Attachment (or traceable to those assets) is still located on the

Individual Defendants' real property on Pickwick Lake and Winwood Farm Loop— which is subject to the Receiver's lien and covered by the Plaintiffs' preliminary injunction—and could be liquidated by the Defendants to the detriment of the Receivership Estate and Plaintiffs' claims. Plaintiffs are aware that Bates holds the mortgages to at least one other home, and is paid rent monthly by former employees of FAMC, which may contain personal assets traceable to the Plaintiffs' funds.

In light of the indictment and these facts, the houses, out buildings, barns, safes, surrounding property, and all vehicles, trailers, tools, boats, tractors, farm equipment and other personal property need to be immediately seized and secured by the Plaintiffs and Receiver to prevent waste, preserve value, and to prevent any of the Defendants from removing or disposing of assets.

In federal court, the state-law remedy of attachment is available under the circumstances and in the manner provided by the law of the state in which the district court is held. Fed. R. Civ. Pro. 64. Under Tennessee law, the Receiver and Plaintiffs are entitled to a writ of attachment when:

> Any person having a debt or demand due at the commencement of an action, or a plaintiff after action for any cause has been brought, and either before or after judgment, may sue out an attachment at law or in equity, against the property of a debtor or defendant, in the following cases:
>
> (2) Where the debtor or defendant is about to remove, or has removed, the debtor's or defendant's person or property from the state;
>
> (3) Where the debtor or defendant has removed, or is removing, the debtor's or defendant's person out of the county privately;
>
> (4) Where the debtors or defendants concealed is so that the ordinary process of law cannot be served upon the debtor or defendant;
>
> (5) Where he absconds, or is absconding or concealing himself or property; [and]

(6) Where he has fraudulently disposed of, or is about fraudulently to dispose of, his property.

Here, cause exists for the issuance of a writ of attachment and pre-judgment lien under at least three of these circumstances. Defendants have attempted to and have concealed assets from the Receiver with the intent to defraud the Receivership Estate and FAMC's customers. Plaintiffs are aware of at least two instances where funds have been diverted in an attempt to evade the preliminary injunction – once, when Kinsey Brown cashed a check from Larry Bates to Robert Bates two weeks after the injunction was ordered, into her account, and the second time, when Robert Bates opened a new checking account at a bank where prior accounts had already been frozen, in an attempt to deposit monies under the radar of the injunction.

The Receiver and Plaintiffs cannot account for precious metals purchased by FAMC with customer funds, as well as the monies paid to FAMC by customers for the purpose of purchasing metals, and reasonably believe that these assets are in the possession, custody and control of the Defendants or others in concert with the Defendants.

The Defendants have used, or caused to be used, assets belonging to Plaintiffs and the Receivership Entities to acquire property for their exclusive benefit. Defendants had a pattern and practice of intermingling corporate and personal funds and using corporate funds for personal benefit at times the Receivership Entities were unable to meet obligations to creditors and customers, as detailed in the depositions of Rosenberg and Butler (D.E. 434 and 435).

In light of the indictment, the Defendants may very well remove, transfer, or attempt to hide these assets to further defraud the Plaintiffs and Receivership Estate.

In addition, the Receiver has an ownership or at least special interest in the assets pursuant to the Receivership Order and will likely lose the ability to acquire and sell the property and assets held by Defendants unless the Court issues a prejudgment writ.

This attachment is not sought for the purpose of injuring or harassing the Defendants, but, to ensure the Receivership Estate and Plaintiffs do not lose the debts owed by the Defendants. The Defendants' most likely source of repayment of the obligations owed to the Receivership Estate and Plaintiffs is through the disposal of real and personal property and the seizure of any precious metals and monies.

Without a writ of attachment, the Receivership and Plaintiffs will probably lose any probability of recovery for easily movable and transferable assets. These assets should be held for the benefit of the Receivership Estate and Plaintiffs. If the assets are not attached, the Defendants will have every incentive use and/or dispose of these assets and any precious metals for their continued benefits (both Indicted and Unindicted Defendants). These recent developments are further incentive to dissipate assets to the detriment of Plaintiffs and the Receiver.

For all these reasons, the Receiver and Plaintiffs request that the Court issue a writ of, attachment for $18,595,578.00 against all real estate, out buildings, safes, surrounding property, all vehicles, trailers, tools, boats, tractors, farm equipment, animals, and other personal property and permitting the Receiver and Plaintiffs to seize any and all personal property, vehicles, tools, equipment, and other assets, wheresoever located or found, on any property owned or controlled by the Individual Defendants.

Considering the nature of the property sought to be attached, the facts of the case, underlying allegations of fraud and Plaintiffs' poor financial conditions, and the substantial

claims of the Plaintiffs and the Receivership Estate, the Receiver and Plaintiffs request that the Court waive the requirement for a surety bond.

        Respectfully submitted,

        HARRIS SHELTON HANOVER WALSH, PLLC

        BY:        s/ Laura S. Martin
                John L. Ryder   Tenn. Disc. No. 8258
                Steven N. Douglass Tenn. Disc. No. 09770
                Laura S. Martin Tenn. Disc. No. 26457
                2700 One Commerce Square
                Memphis, Tennessee 38103-2555
                (901) 525-1455
                lmartin@harrisshelton.com

        *Receiver and Counsel to the Receiver*

        LAW OFFICE OF J. HOUSTON GORDON, PLLC

        BY:        s/ Amber Griffin Shaw
                Amber Griffin Shaw TN #026337
                J. Houston Gordon TN #07523
                Lyle Reid TN#07779
                114 W. Liberty Ave, Suite 300
                Covington, TN 38019
                (901) 476-7100
                ashaw@lawjhg.com

        *Plaintiffs' Counsel*