**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

**DAMIAN ORLOWSKI, et al**

***Plaintiffs on behalf of themselves and others similarly situated,***

**v.**

**LARRY BATES, et al**

***Defendants*.**

**Case No. 2:11-cv-01396**

**JURY DEMANDED**

---

**PLAINTIFFS' BRIEF IN SUPPORT OF CONTINUING THE PREJUDGMENT ATTACHMENT AND PRESERVING THE STATUS QUO**

---

COME NOW the Plaintiffs, on behalf of themselves, and all others similarly situated, by and through their attorneys, and submit their brief in support of continuing the Court's Order of Prejudgment Attachment and Preserving the Status Quo, and would show:

## I. INTRODUCTION

On August 6 and 7, 2015, this Court granted the Joint Motion of the Plaintiffs and Receiver for Prejudgment Attachment of all personal and real property (ECF #440, 443) until such time as a hearing could be held. The properties were secured on August 10 and 11, 2015, and a hearing on the matter was held on August 12, 2015.

As a result of the hearing, the Court ordered the attachment to remain in place, requested a brief as to why the Court should allow the attachment to remain, and set a status conference for September 2, 2015 (ECF #448).

During the hearing, defense counsel for Robert Bates and Chuck Bates requested that the brief contain separate sections as to each Defendant's actions. As follows, Plaintiffs have attempted to set forth the reasons as to each Defendant why the Court should allow the attachment to remain in place, and preserve the status quo.

## II. MIDDLETON PROPERTIES

The properties located in Middleton, TN, as depicted on the map tendered as Exhibit 5 at the hearing, are owned by Larry and Barbara Bates, Chuck and Melissa Bates, and Robert Bates. Larry and Barbara Bates own approximately 384 acres, which contains three houses, two large "barns," a cattle barn, a hay barn, and other improvements holding multiple pieces of farm and other equipment on the properties. These properties are located on Winwood Farm Loop. Centrally located in the middle of the barns, houses, and main home owned by Larry and Barbara Bates is the home and land owned by Chuck and Melissa Bates.[1] Across the road are two unimproved parcels owned by Larry and Barbara Bates and Robert Bates. These properties have multiple older and

[1] As part of the Receiver's investigation, accountant Rhett Butler testified that Larry Bates had withdrawn monies from FAMC, Inc. and deposited them into a futures account. Mark Rosenberg testified that during this same time, when money was moved out of the corporation, FAMC was insolvent and orders were unfulfilled. Money was made off of the trading conducted with the futures account, which was then withdrawn into the personal accounts of Larry Bates and used to purchase the land and home owned by them. Chuck and Melissa Bates also received a $400,000 "loan" from these monies from Larry Bates, who executed a mortgage with Chuck and Melissa Bates. (See deposition of Chuck Bates, pp. 19-20, ECF #323). An executed warranty deed was authenticated by Barbara Bates in her deposition (ECF #87, Exhibit 3). Larry and Barbara Bates hold the mortgage on Chuck and Melissa Bates' home on the Middleton property (ECF #87, p. 67-68).

newer fences that criscross the property, and it is impossible to shut off access between the property owned by Larry Bates and Barbara Bates and the property owned by Chuck and Melissa Bates. These properties were secured on August 10, 2015.

**III. PICKWICK AND COLLIERVILLE PROPERTIES**

In addition to the Middleton properties, Robert Bates, Kinsey Bates, and Larry Bates own property in Counce, TN, near Pickwick Lake,[2] and Robert Bates and Kinsey Bates rent a home in Collierville, TN.[3] Plaintiffs and Receiver have offered the use of the Pickwick property to any of the Bates for the duration of the pendency of this matter. It is fully furnished.

**IV. STATUS OF PERSONAL PROPERTY**

The Receiver, with no objection from Plaintiffs, has offered to allow the Defendants access to the properties to obtain all clothes, shoes, toiletries, and necessary luggage, all family portraits and pictures, and the family Bible and school books (as required by Tenn. Code Ann. 26-2-104), as well as personal mementos, keepsakes, family and personal records, children's toys, and other items necessary for the children's care, education and housing. They were requested obtain any groceries, perishable food items cleaning products, laundry detergent and the like when they collect these items.[4] No access to the properties has been requested as of the filing of this motion.

---

[2] As testified to by Barbara Bates, she and Larry Bates also own the mortgage to the Pickwick Property. ECF #87, pp. 67-88.

[3]Robert and Kinsey Bates were evicted from their home this month in a separate, unrelated action, due to failure to pay rent, pending in the General Sessions court of Shelby County, Tennessee. Prior to the eviction, rent had been paid at a rate of $3,000 per month.

[4]These offers were sent to the Bates via Tarry Beasley, as no forwarding addresses have been provided to the Receiver or Plaintiffs for any of the Defendants, including pro se Defendants Larry and Barbara Bates.

Chuck and Melissa Bates' family pet, a Maine Coon cat, was initially secured and provided all up to date shots by the Plaintiffs/Receiver, then offered to be returned to the Bates. They did not want the cat to be returned to them. Four Labrador retrievers were also found on the property owned by Larry and Barbara Bates. One of those dogs has been identified as Hunter Bates' dog, and arrangements have been made to return the dog to him. The other dogs are in the custody of a veterinarian, at the expense of Plaintiffs and Receiver, and have been provided all shots and vaccinations.

## V. CASE LAW REGARDING PREJUDGMENT ATTACHMENT

Rule 64(a) and Tenn. Code Ann. § 29-6-101 *et seq*. govern prejudgment attachment.

Rule 64 provides means by which a claimant may seek an order of court to seize a person or property in order to secure satisfaction of the eventual judgment. This includes any available state remedy that provides for seizing property to secure satisfaction of the potential judgment, including attachment. Fed. R. Civ. P. 64(a) and (b).

Tenn Code Ann. 29-6-101 *et seq* sets forth the grounds and procedures for the issuance of a prejudgment writ of attachment. A plaintiff must show (1) the nature and amount of the debt or demand, (2) that the claim is "just," or, if the action is based in tort, that "the damages sued for are justly due the plaintiff," and (3) that one of the factors enumerated in Tenn. Code Ann. § 29-6-101 exists. Those factors as relevant to the action *sub judice* include:

> (2) Where a debtor or defendant is about to remove, or has removed, the debtor's or defendant's person or property from the state;
> (3) Where the debtor or defendant has removed, or is removing, the debtor's or defendant's person out of the county privately;
> (4) Where the debtors or defendants concealed is so that the ordinary process of law cannot be served upon the debtor or defendant;
> (6) Where the debtor or defendant has fraudulently disposed of, or is about fraudulently to dispose of, the property[.]

Tenn. Code Ann. § 29-6-113.

To sustain a prejudgment writ of attachment, a plaintiff must cite specific facts that go beyond "a matter of mere apprehension." *Brown v. Crenshaw*, 64 Tenn. 584, 585 (1875). Strict construction is given to the attachment statutes insofar as the prescribed causes for which attachment may issue; yet Tennessee attachment statutes are to be liberally construed as a general rule, including liberal construction as to the remedy, and avoidance of attachment on the basis of a mere technicality appears to be contrary to the public policy in Tennessee. *In re Chemical Separations Corp.*, 1983, 29 BR 240; *Willshire v. Frees*, 201 S.W.2d 675 (Tenn.1947). The remedy by attachment is in derogation of common law, and should be applied strictly, but liberally construed to accomplish its legitimate mission. *Jackson v. Burke*, 26 Tenn. 210 (Tenn. 1846). If the debtor removes himself or his property, with the intention of not returning, or of defeating his creditor in collecting his debt, then the attachment will lie. The right to attachment depends on the facts of the case. *Lyons v. Mason*, 44 Tenn. 525 (Tenn. 1867).

In the context of the facts alleged in this Complaint, *Allen Corp. of Am. v. Zayas*, No. TDC-14-3719, 2014 U.S. Dist. LEXIS 168223 (D. Md. Dec. 4, 2014), is instructive. There, the district court examined the Maryland prejudgment attachment statute where the plaintiff filed a civil complaint alleging counts including breach of fiduciary duty, fraud, and civil conspiracy. While under Maryland law, prejudgment attachment was not proper "merely because a complaint asserts that the debtor has perpetuated a fraud" ( *Levitt v. State of Md. Deposit Ins. Fund Corp.*, 505 A.2d 140, 146 (Md. Ct. Spec. App. 1986)), "when fraud is alleged and the facts as pleaded indicate a substantial likelihood of fraud, as well as the probability that the defendants will, before judgment, dispose of assets fraudulently acquired, a court has jurisdiction to enjoin the defendants' dissipation

of assets." (*Levitt*, A.2d at 147). The district court found Plaintiff had sufficiently alleged facts showing a substantial likelihood of fraud and that the defendants would dispose of assets before judgment. The plaintiff had provided proof of the fraud and the amount of the fraud in support of the prejudgment attachment, including the misrepresentations made and the amount of damages anticipated. Accordingly, the district court found that it was authorized to order the prejudgment attachment.

*Sub judice*, the facts are similar and the attachment should remain in place.

## VI. THE ATTACHMENT SHOULD REMAIN IN PLACE AND STATUS QUO SHOULD BE MAINTAINED

There is no question but that Plaintiffs are able to meet the requirements of the Tennessee prejudgment attachment law as to the Defendants, including the Indicted Defendants, Chuck Bates, Robert Bates, and Larry Bates.

### A. As to All Defendants

Plaintiffs adopt all proof and exhibits submitted at the August 12, 2015 hearing by reference as if incorporated here verbatim (ECF #457). Additionally, the Receiver, in his deposition and report (ECF #433), as well as accountant Rhett Butler, in his deposition and report (ECF #435), have cited specific examples of the defendants' concealing, absconding with, and/or fraudulently transferring property from company property to personal property.

As stated by the Receiver in its Verified Motion (D.E. #359), Defendants had a pattern and practice of intermingling corporate and personal funds and using corporate funds for personal benefit at times the Receivership Entities were unable to meet their obligations (D.E.#359, p. 2). Rhett Butler gave multiple examples in his report and during his deposition (D.E.#435) of the usage of

corporate credit cards, paid for by the company, used for travel, clothing, and other improper uses. The Receiver gave numerous examples of the procurement of land, homes, a boat, and numerous vehicles, as well as jewelry. Plaintiffs rely on these examples and those reports.

**B. Larry Bates**

As to Defendant Larry Bates, the Receiver previously reported that he had transferred funds from FAMC to a brokerage account at R.J. O'Brien, maintained individually. He would then transfer funds from this brokerage account to a personal bank account at Bancorp South, a series of transfers totaling $5,850,000.00 between 2008 and 2010. On December 6, 2010, Larry Bates transferred $727,615.23 (the balance) from R.J. O'Brien account to a personal account at another brokerage firm, ADM Investor Services, and subsequently transferred amounts totaling $810,000.00 between December 2010 and January 2012. See D.E. #359, pp. 2-4.

These funds were used to purchase real property, including the land now owned by Chuck Bates and Robert Bates, vehicles, equipment, a boat, and jewelry. For example, Larry Bates gave Robert Bates $15,000 on June 20, 2009 to purchase a vehicle. On November 27, 2009, Landers Ford received $22,175.61 for a 2010 F-150 now owned by Chuck Bates. On March 31, 2010, Sunrise Chevrolet received $60,378.50 for a 2010 Suburban now secured by prejudgment attachment. With the exception of the Suburban, none of these vehicles can be found.[5]

---

[5]Although the Receiver made it clear at the hearing that the Plaintiffs and Receiver had no interest in attaching the vehicles of Defendants at this time, none of the vehicles owned by them purchased by company funds have been located. In fact, Robert Bates has been driving a red Chevy Cruze registered to Hertz Rental Car, and Larry Bates has been driving a black Ford Expedition believed to be registered to Enterprise Rental Car since before the attachment. Such actions beg the question as to whether those assets, owned by them, have been sold or concealed.

On May 25, 2011, the same day Larry Bates transferred $220,000 to his personal accounts from ADM Investors, Larry Bates gave Robert Bates $25,000. Robert Bates then withdrew $23,169.00 and purchased a boat from Carey & Sons Marina and made arrangements to store the 23 foot boat at Sportsman's Boat Storage on Pickwick Lake.

Likewise, the individual checking account ledgers of Larry Bates show numerous transfers to Robert Bates and Chuck Bates during the same dates as the ADM and RJO transfers to Larry Bates' personal accounts. Plaintiffs have attached some examples as Exhibits 1-12 hereto. As follows:

| | | | |
|---|---|---|---|
| Ex. 1: | 8/3/2009 | Chuck Bates loan | $9,000.00 |
| Ex. 2: | 6/20/2009 | Robert Bates loan | $15,000.00 |
| Ex. 3: | 11/3/2009 | Chuck Bate Draw Const. Loan | $30,000.00 |
| | 12/6/2009 | Chuck Bates Washer/Dryer | $500.00 |
| | 12/6/2009 | Chuck Bates Draw Const. Loan | $30,000.00 |
| Ex. 4: | 1/4/2010 | Robert Bates loan | $3,500.00 |
| Ex. 5: | 9/2/2010 | Charles Bates Draw on Home loan | $30,000.00 |
| Ex. 6: | 9/9/2010 | Robert Bates Add to RE Loan | $5,000.00 |
| Ex. 7: | 6/8/2010 | Robert L Bates Hunter School | $9,000.00 |
| Ex. 8: | 12/25/2010 | Chuck Bates | $500.00 |
| | 12/25/2010 | Robert Bates | $500.00 |
| | 1/20/11 | Robert Bates Hunter school | $700.00 |
| Ex. 9: | 4/5/2011 | Chuck Bates draw | $30,000.00 |
| Ex. 10: | 1/26/11 | Chuck Bates loan Home Const. | $40,000.00 |

| | | |
|---|---|---|
| Ex. 11: 5/3/11 | Chuck Bates draw | $32,000.00 |
| 5/10/11 | Chuck Bates draw | $30,000.00 |
| 5/19/11 | Chuck Bates draw | $30,000.00 |
| 5/25/11 | Robert Bates | $20,000.00 |
| 5/28/11 | Chuck Bates draw - const loan | $40,000.00 |
| 6/8/11 | Chuck Bates | $28,768.88 |
| Ex. 12: 2/22/11 | Chuck Bates Draw Const. Loan | $30,000.00 |
| 3/24/11 | Chuck Bates const draw loan | $30,000.00 |
| 4/21/11 | Chuck Bates draw | $20,000.00 |

In these examples, Robert Bates received a total of $53,700 between 2009 and 2011, and Chuck Bates received $410,768.88.

As was presented at the hearing, Plaintiffs provided ample photographs showing that Larry Bates and Barbara Bates were preparing to transfer or conceal assets, or had already done so at the time of the prejudgment attachment. Since the hearing, the Receiver discovered an empty coin container outside of the guest home on the property where Alan Bailey resided, Plaintiffs discovered and turned over to the Receiver a small box of silver eagle coins, along with various other coins, inside of a FAMC coin bag located in the home office of Larry Bates (Exhibit 13 hereto)[6], company computers, boxes of company documents (again, the Bates represented that all company documents were in the possession of the Receiver), and other company property. Upon entry into the elevator

[6]Despite the testimony of Larry Bates that all coins had been turned over to the Receiver and he was not in possession of any coins. Specifically, Larry Bates represented on numerous occasions that Mr. Ryder had visited his home and taken possession of ALL coins, that he remained in possession of none.

by Plaintiffs, it appeared that paintings were being transported into the elevator and were not on the walls. As reported at the hearing, the jewelry box of Mrs. Barbara Bates had been totally emptied, and there were numerous drawers that were empty or where items had been removed. There is no question that assets have been and are anticipated to be concealed from Plaintiffs. There is no question but that Larry and Barbara Bates have acted to conceal assets to attempt to defeat the claims of Plaintiffs, and the status quo should be maintained.

**C. Chuck Bates**

As to Defendant Chuck Bates, Plaintiffs adopt all proof provided at the prior hearing. In addition, upon returning to Mr. Bates' home, Plaintiffs photographed the note left for Plaintiffs/Receiver, along with a copy of the Constitution and the card of his criminal attorney. See Exhibit 14. It appeared that Mr. Bates had bullets in the home, of several different caliber. See Exhibits 15, 16, 17, and 18, along with a rifle scope. There was one weapon found on the property, but several different types of ammunition and the scope. There were drawers that had been emptied (Exhibit 19), and his what appeared to be his daughter's room, clothes and toys had been placed into garbage bags and drawers had been emptied. Exhibit 20 and 21. Mr. Bates had left a set of safe keys in the home (Exhibit 22), but no safe was located on the property, although there was an empty shelf where a safe would fit (Exhibit 28). Mr. Bates also left a set of keys that change the combination on a different type of safe, a keypad safe, but no keypad safe was located on the property (Exhibit 23). There were four holsters found on the property, but no weapons that fit the holsters (Exhibit 24). There was a box for an iPad, but no iPad was located. Exhibit 25. Outside of the home, there appeared to be dangling electronic wires on the corner of the property closest to the driveway, and the exterior porch adjacent to the front door ceiling, but no cameras and no electronic surveillance

system was found inside the home. Exhibits 26 and 27. In the secured garage of the property, there was an empty area where a freezer appeared to be previously located, but there was no deep freezer located on the property (Exhibit 28). No precious metals were found on the property, although Mr. Bates testified in his deposition that he owned a third of his total assets in precious metals. No vehicles were located on the property.

Based on this proof, Plaintiffs urge the Court to maintain the status quo, and find that, similarly to the evidence presented as to Larry Bates, there have been weapons removed from the property of Chuck Bates, as well as surveillance equipment, safes, a deep freezer, electronics, precious metals, and other assets that have been disposed of or concealed. There is no question but that Chuck Bates has acted to conceal assets to attempt to defeat the claims of Plaintiffs, and the status quo should be maintained.

**D. Robert Bates**

As to Defendant Robert Bates, the Plaintiffs adopt all of the proof presented at the previous hearing, and would state, that upon inspection of the property rented by Robert Bates, boxes of company documents were found in the garage. Both vehicles known to Plaintiffs were not located on the property, and the boat owned by Robert Bates cannot be found. Additionally, the residence of Robert Bates rented by him has now been returned to its owner as a result of an independent, unrelated eviction action, and as a result, the Plaintiffs and Receiver are arranging for the personal items to be stored.

Upon securing the land owned by Robert Bates (deeded over to Tarry Beasley with the permission of Plaintiffs in order to retain him as counsel) in Middleton, TN, Plaintiffs located two bulldozers known to have been purchased with company assets. Exhibit 28 hereto. This property

is not visible from the road, and is gated to prevent entry. The dozers were located on the back part of the property.

There is no question but that Robert Bates has acted to conceal assets to attempt to defeat the claims of Plaintiffs, and the status quo should be maintained.

In conclusion, Plaintiffs respectfully request that the status quo be maintained, and that the properties remain attached while this action remains pending. Plaintiffs and Receiver have offered the Defendants the ability to remove personal items, and have offered the furnished, three bedroom Pickwick lake house to be used by the Defendants for the pendency of this action. It is not the desire of the Plaintiffs to be unreasonable, but simply to preserve and protect all assets that could be used to satisfy a judgment. It is clear from the proof to be presented that Larry Bates, Robert Bates, and Chuck Bates have acted to conceal and/or dissipate assets, and that prejudgment attachment is warranted.

RESPECTFULLY SUBMITTED August 25, 2015.

LAW OFFICE OF J. HOUSTON GORDON

BY: /s/ Amber Griffin Shaw

J. HOUSTON GORDON, (TN #7523)
LYLE REID, (TN#07779)
AMBER GRIFFIN SHAW, (TN #026337)
CHARLES BRASFIELD, (TN# 31040)
SAMUEL IVY (TN# 033367)
Suite 300, Hotel Lindo Building
114 West Liberty Avenue
P. O. Box 846
Covington, TN 38019-0846
(901) 476-7100/Telephone
(901) 476-3537/Facsimile
lawjhg@comcast.net

MANTESE HONIGMAN ROSSMAN & WILLIAMSON, P.C.

By: /s/ Gerard V. Mantese

GERARD V. MANTESE, (P#34424)
JOSH LUSHNAT, (P#75319)
DAVID HONIGMAN, (P#33146)
BRENDAN HENRY FREY, (P#34424)
1361 E. Big Beaver Road
Troy, MI 48083
248-457-9200.Office
248-457-9201.Fax
gmantese@manteselaw.com

*Attorneys for Plaintiffs and class members*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 25, 2015, a true and correct copy of the foregoing document was forwarded by electronic means *via* the Court's electronic filing system to:

John L. Ryder (TN#8258)
Ms. Laura S. Martin (TN#26457)
Ms. Caroline Lee Giovannetti (TN#
HARRIS, SHELTON, HANOVER, & WALSH, PLLC
*Receiver for First American Monetary Consultants & Information Radio Network, Inc.*
2700 One Commerce Square
Memphis, TN 38103-255
901-525-1455
jr156@harrisshelton.com
lmartin@harisshelton.com

T. Tarry Beasley, II (TN#4869)
BEASLEY LAW FIRM
*Attorney for Defendants, Robert Bates and Charles "Chuck" Bates*
1850 Poplar Crest Cove, Suite 200
Memphis, TN 38119
901-682-8000. Telephone
901-682-8887. Facsimile
tarry@beasleylawfirm.org

Mr. Randall J. Fishman, (TN#7097)
Mr. Richard S. Townley (TN #28164)
BALLIN, BALLIN & FISHMAN, P.C.
*Attorneys for Defendant*, Cecilia "Cindy" K. Standley
200 Jefferson Avenue, Suite 1250
Memphis, TN 38103
901-252-6278.telephone
901-5256294.facsimile
ecfcivil@bbfpc.com

and via email and U.S. Mail to:

Mr. Charles Larry Bates, *Pro Se Defendant*
3780 Windwood Farms Loop
Middleton, TN 38052
drlarrybates@attglobal.net

Mrs. Barbara B. Bates, *Pro Se Defendant*
3780 Windwood Farms Loop
Middleton, TN 38052
bbates@famc.com

Mrs. Kinsey Brown Bates
*Defendant*
197 Ivy Grove Lane
Collierville, TN 38017 and
P.O. Box 38117
Germantown, TN 38183
whb06school@yahoo.com

/s/Amber G. Shaw