UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION


DAMIAN ORLOWSKI, et al.,                 )
                                         )    Case No. 2:11-cv-01396
     *Plaintiffs on behalf of*           )
     *themselves and others*             )
     *similarly situated,*               )
                                         )
                                         )
v.                                       )
                                         )
LARRY BATES, et al.,                     )
                                         )
     *Defendants.*                       )

_____

ORDER GRANTING PLAINTIFFS' MOTION TO CONTINUE THE PREJUDGMENT
ATTACHMENT AND PRESERVE THE STATUS QUO; ORDER DENYING DEFENDANTS
ROBERT AND CHARLES BATES' MOTION FOR RELIEF FROM ATTACHMENT;
ORDER DENYING PLAINTIFFS' MOTION FOR NEGATIVE INFERENCE TO
ATTACH TO ALL DECLARATIONS OF THE FIFTH AMENDMENT MADE IN THESE
PROCEEDINGS; ORDER DENYING DEFENDANTS LARRY AND BARBARA BATES'
MOTION TO NULLIFY PREJUDGMENT ATTACHMENT AND MOTION FOR
SANCTIONS

_____

Before the Court are Plaintiffs' Brief in Support of
Continuing the Prejudgment Attachment and Preserving the Status
Quo ("Motion to Continue the Prejudgment Attachment and Preserve
the Status Quo")[1] (ECF No. 459), filed August 25, 2015, and
Defendants Robert and Charles Bates' Motion for Relief from
Attachment, for the Return of Defendants' Personal Property and

_____

[1] Plaintiffs classified this document as a motion in the electronic filing
system, but entitled it "Plaintiffs' Brief in Support of Continuing the
Prejudgment Attachment and Preserving the Status Quo." For clarification,
the Court restyles Plaintiffs' Brief "Motion to Continue the Prejudgment
Attachment and Preserve the Status Quo."

1

Information Seized by the Plaintiffs and/or Receiver, and for Suppression of Evidence Seized in Violation of Attorney-Client Privilege ("Motion for Relief from Attachment")[2] (ECF No. 474), filed September 1, 2015.

Also before the Court are Plaintiffs' Motion for Negative Inference to Attach to All Declarations of the Fifth Amendment Made in these Proceedings (ECF No. 477), filed September 1, 2015, and Defendants Larry and Barbara Bates' Motion to Nullify Prejudgment Attachment and Motion for Sanctions (ECF No. 497), filed October 2, 2015.

For the reasons stated below, the Court GRANTS Plaintiffs' Motion to Continue the Prejudgment Attachment and Preserve the Status Quo; DENIES Defendants Charles and Robert Bates' Motion for Relief from Attachment; DENIES Plaintiffs' Motion for Negative Inference to Attach to All Declarations of the Fifth Amendment Made in These Proceedings; and DENIES Defendants Larry and Barbara Bates' Motion to Nullify Prejudgment Attachment and Motion for Sanctions.

## I. BACKGROUND

This case involves allegations of a complex, large-scale scheme to defraud hundreds of people over the course of many years. (See 3d Am. Compl., ECF No. 375.) Defendant Larry Bates

---

[2] The Court resolved the portion of this motion relating to Defendants' attorney-client privilege at the hearing on September 2, 2015. Accordingly, the Court does not re-address that issue in this Order.

was the CEO and "Chief Economist" of Defendant First American Monetary Consultants, Inc. ("FAMC") as well as CEO and President of Defendant Information Radio Network, Inc. ("IRN"). (Id. ¶ 6.) Defendant Charles Bates served as Executive Vice President and News Director for IRN (id. ¶ 10) and held himself out as an "Economist" of FAMC (id. ¶ 23). Defendant Barbara Bates served as Vice President of Administration for FAMC and was a 50% shareholder in FAMC. (Id. ¶ 9.) Defendant Robert Bates served as "Senior Monetary Consultant" for FAMC. (Id. ¶ 11.)

Through mechanisms including "radio, television, books, newsletters, toll free numbers, email, direct mail, and personal solicitation at churches and conferences across the nation," Defendants advertised to and solicited money from individuals "for the alleged and believed purpose of purchasing gold, silver and precious metals through Defendants." (Id. ¶ 25.) "These purchases of precious metals [were] advertised by Defendants as a 'safe' purchase to protect and harness wealth during, what Defendants characterize[d] as, a period of world chaos and uncertainty, based on Christian beliefs and political upheaval." (Id. ¶ 26.) Defendants received orders for precious metals from more than 500 customers. (Id. ¶ 148.) Plaintiffs allege that these sales were made as part of a scheme devised by Larry Bates, Robert Bates, Charles Bates, Barbara Bates, Cindy

Standley, Kinsey Brown Bates, and others, and designed to defraud customers. (See id. ¶ 46.)

Plaintiffs initially filed this case on December 28, 2011. (See Compl., ECF No. 1.) Plaintiffs filed their First Amended Complaint on August 13, 2012 (ECF No. 53), their Second Amended Complaint on March 14, 2014 (ECF No. 224), and their Third Amended Complaint on October 20, 2014 (ECF No. 375).

On December 17, 2013, Plaintiffs moved for class certification. (ECF No. 182.) The Court held a hearing on the motion for class certification on April 29, 2014. (ECF No. 285.) The Court granted Plaintiffs' motion for class certification on April 30, 2014 (ECF No. 289), and issued an amended order certifying the class later that same day (ECF No. 290).

On August 4, 2015, a federal grand jury issued an indictment against Defendants Larry Bates, Charles Bates, and Robert Bates ("the indicted Defendants"). (See United States v. Bates, No. 2:15-cr-20192-SHL, ECF No. 1.) Following this indictment, Plaintiffs and the Receiver filed an emergency motion for temporary prejudgment attachment of the indicted Defendants' personal property on August 6, 2015, alleging that they believed that "in the face of the indictment, the Indicted Defendants . . . will remove themselves and/or assets directly or indirectly traceable to funds received by FAMC from customers from the jurisdiction of the Court, or sell, transfer, dissipate

or otherwise seek [to] defeat the Plaintiffs and the Receivership Estate to assets that were purchased with funds of or traceable to the Receivership Entities." (ECF No. 439 at 2-3.) The Court granted this motion that same day. (ECF No. 440.) Plaintiffs and the Receiver then filed an emergency motion for temporary prejudgment attachment of the indicted Defendants' real property on August 7, 2015 (ECF No. 442), which the Court granted that same day (ECF No. 443).

The Court held a telephonic status conference on the emergency prejudgment attachment on August 10, 2015. (ECF No. 445.) On August 12, 2015, the Court held a post-order hearing, at which Plaintiffs and the Receiver presented preliminary evidence regarding the need for attachment. At this hearing, Plaintiffs and the Receiver noted difficulties securing Defendant Robert Bates' boat, a safe deposit box held at Plain Commerce Bank, and the alarm codes for Defendants' real properties. The Court entered an Order Requiring Robert Bates to Turn Over His Boat to the Receiver (ECF No. 460), an Order Requiring Plains Commerce Bank to Tender All Funds and Contents of Any Safe Deposit Box Held By Any of the Defendants Over to the Receiver (ECF No. 461), and an Order Requiring All Alarm Management Companies with Contracts with Any Defendant for Property Owned or Controlled by the Defendants to Communicate

Only with the Receiver and Cease All Communications with Any Defendant or Other Account Holder (ECF No. 462).

Defendant Larry Bates filed a Motion for Appointment of Counsel and Motion to Stay on August 12, 2015 (ECF No. 447), and Defendant Barbara Bates filed a parallel motion on August 13, 2015 (ECF No. 454). Plaintiffs filed a response to these motions on August 24, 2015. (ECF No. 458.) The Court denied both motions on August 26, 2015. (ECF Nos. 463, 464.) On August 31, 2015, Defendants Barbara and Larry Bates filed a Notice of Appeal. (ECF No. 471.)

On August 25, 2015, Plaintiffs filed a Motion to Continue the Prejudgment Attachment and Preserve the Status Quo. (ECF No. 459.) On September 1, 2015, Defendants Robert and Charles Bates filed a Motion for Relief from Attachment, for the Return of Defendants' Personal Property and Information Seized by the Plaintiffs and/or Receiver, and for Suppression of Evidence Seized in Violation of Attorney-Client Privilege. (ECF No. 474.) Also on September 1, 2015, Plaintiffs filed a Motion for Negative Inference to Attach to All Declarations of the Fifth Amendment Made in These Proceedings. (ECF No. 477.)

The Court held a hearing on the temporary prejudgment attachment on September 2, 2015, to address whether the attachment should be maintained. (ECF No. 478.) Prior to this hearing, Defendants Robert and Charles Bates filed a motion to

quash their subpoenas. (ECF No. 468.) Plaintiffs filed a response in opposition on September 1, 2015. (ECF No. 477.) At the September 2, 2015, hearing, the Court denied Defendants Robert and Charles Bates' motion to quash and took the remaining motions under advisement. (ECF No. 478.)

Following the hearing on September 2, 2015, the Court ordered briefing on the issue of whether Defendants Barbara and Larry Bates' appeal divests this Court of jurisdiction in this case. (ECF No. 480.) Defendants Barbara and Larry Bates filed their briefing on September 9, 2015 (ECF No. 484), and Plaintiffs filed their briefing on that same day (ECF No. 485).

On September 29, 2015, the Court notified the Receiver and Plaintiffs that they had not fully complied with the technical requirements set forth in Tenn. Code Ann. § 29-6-113. (ECF No. 494.) The Receiver and Plaintiffs filed the affidavit of John Ryder in Support of Prejudgment Attachment on October 1, 2015. (ECF No. 495.) On October 2, 2015, Defendants Larry and Barbara Bates filed a Response in Opposition and Motion to Nullify Prejudgment Attachment Orders for Non-Compliance with Tenn. Code Ann. § 29-6-113 and Non-Compliance with Tenn. Code Ann. § 29-6-115 Requiring Sufficient Bond of Plaintiffs Payable to the Defendants and Motion for Sanctions ("Motion to Nullify Prejudgment Attachment and Motion for Sanctions"). (ECF No.

497.)  The Receiver and Plaintiffs filed a Joint Response in Opposition on October 14, 2015.  (ECF No. 500.)

On October 15, 2015, the Receiver and Plaintiffs filed supplemental evidence in support of continuing the pre-judgment attachment.  (ECF No. 501.)

## II.  LEGAL STANDARD

### A.  Prejudgment Attachment

Rule 64 of the Federal Rules of Civil Procedure provides that "throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."  Fed. R. Civ. P. 64(a).  In Tennessee, the law provides for the issuance of a prejudgment writ of attachment when certain criteria are met.  In order to attach property under Tennessee law, a plaintiff must state under oath "the nature and amount of the debt or demand, and that it is a just claim; or if the action is for a tort, that the damages sued for are justly due the plaintiff"; and a plaintiff must demonstrate that one or more of the causes enumerated in Tenn. Code Ann. § 29-6-101 exists.  Tenn. Code Ann. § 29-6-113.  The grounds relevant to the instant case include:

> (2) Where the debtor or defendant is about to remove, or has removed, the debtor's or defendant's person or property from the state;

(3) Where the debtor or defendant has removed, or is removing, the debtor's or defendant's person out of the county privately;

(4) Where the debtors or defendants concealed is so that the ordinary process of law cannot be served upon the debtor or defendant;

(5) Where the debtor or defendant absconds, or absconded concealing the debtor's or defendant's person or property;

(6) Where the debtor or defendant has fraudulently disposed of, or is about fraudulently to dispose of, the property[.]

Tenn. Code Ann. § 29-6-101. Strict construction is afforded to the attachment statutes insofar as the enumerated causes for which attachment may issue. A.G. Campbell & Co. v. Chem. Separations Corp. (In re Chem. Separations Corp.), 29 B.R. 240, 243 (Bankr. E.D. Tenn. 1983); see also Willshire v. Frees, 201 S.W.2d 675, 677-78 (Tenn. 1947). Once jurisdiction has been properly obtained, however, "the attachment statutes are liberally construed as to the remedy." Id.

## B. Negative Inference Based on Assertion of Privilege

The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

The fifth amendment privilege not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

Donovan v. Fitzsimmons, 718 F.2d 161, 164-65 (6th Cir. 1983).

"[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ." Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). This holding, however, "is not a blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances in the civil context." Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1264 (9th Cir. 2000).

> A trial court must carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side.

SEC v. Graystone Nash, Inc., 25 F.3d 187, 192 (3d Cir. 1994).

## III. ANALYSIS

### A. Threshold Question of Jurisdiction

The Court first addresses the threshold question of whether it has jurisdiction in this matter, pending the adjudication of Defendants Barbara and Larry Bates' appeal of the Court's orders denying Defendants' motions to appoint counsel and motions to stay.

On August 31, 2015, Defendants Barbara and Larry Bates filed a notice of appeal regarding four of this Court's orders

(ECF Nos. 440, 443, 463, 464). (ECF No. 471.) Following a status conference in this case, the Court ordered briefing on whether the notice of appeal divests this Court of jurisdiction pending the Sixth Circuit's review of this matter. On September 9, 2015, Defendants Barbara and Larry Bates filed a brief on this issue. (ECF No. 484.) Also on September 9, 2015, Plaintiffs filed their brief on this issue. (ECF No. 485.) Defendants Charles and Robert Bates did not submit any briefing on this issue.

As a general rule, an appeal divests the district court of power to modify its judgment or take other action affecting the cause without permission from the court of appeals, except insofar as a statute or rule expressly reserves the district court's jurisdiction in aid of appeal. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 379 (1985) (citing Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58-60 (1982) (per curiam)). If, however, the appeal is from an interlocutory order, the district court retains jurisdiction to act on matters not involved in the appeal unless an order is entered staying the remainder of the proceedings. See Weaver v. Univ. of Cincinnati, 970 F.2d 1523, 1328-29, 6th Cir. 1992 (citing Marrese, 470 U.S. at 378-79). Moreover, when the notice of appeal is a nullity, "it is as if no notice of appeal were filed at all." Griggs, 459 U.S. at 61. To this end, "the Court of

Appeals lacks jurisdiction to act," and the appeal therefore never divests the district court of jurisdiction. See id.

Courts of appeals have jurisdiction over appeals from final decisions of the district court, as well as over appeals from certain interlocutory orders. 28 U.S.C. §§ 1291, 1292. A final decision under section 1291 includes orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). Additionally, under section 1292, courts of appeals have jurisdiction of appeals from (1) "[i]nterlocutory orders of the district courts . . . granting, continuing, [and] modifying . . . injunctions"; (2) "[i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships"; and (3) "[i]nterlocutory decrees . . . determining the rights and liabilities of the parties to admiralty cases." 28 U.S.C. § 1292.

In the instant case, a court of appeals would not have jurisdiction over an order granting a writ of prejudgment attachment or an order denying the appointment of counsel and denying an associated stay. Said orders are not final decisions, nor are they appealable interlocutory orders as

enumerated in section 1292. With respect to the orders granting prejudgment attachment, an attachment is not equivalent to an injunction. See Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 156-57 (1st Cir. 2004); FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1112 (9th Cir. 1982) (noting that an asset freeze that did not meet the requirements of attachment under state law "is not an attachment," but is an injunction). While an order granting an injunction may be immediately appealed under section 1292, an order granting an attachment under state law falls outside the scope the interlocutory appeals statute.

Additionally, an order granting attachment is not a collateral order immediately appealable under Cohen. See Hitachi Zosen Clearing, Inc. v. Tek-Matik, Inc., 846 F.2d 27, 29 (6th Cir. 1988) ("agree[ing] with the other courts of appeals, and conclud[ing] that an order granting a motion for a [prejudgment security device] is not immediately appealable under Cohen").

With respect to the orders denying appointment of counsel and the associated motions to stay, the Sixth Circuit has held that it does not have jurisdiction over immediate appeals of orders denying appointment of counsel. Henry v. City of Detroit Manpower Dep't, 763 F.2d 757, 764 (6th Cir. 1985). Defendants Barbara and Larry Bates requested a stay of the proceedings "until such time as counsel is appointed to represent the

Defendant and counsel enters an appearance in this case." (ECF No. 447 at 1-2; ECF No. 454 at 2.) This request is fundamentally associated with the motion for appointment of counsel. Just as the denial of appointment of counsel is not an immediately appealable order, the denial of the associated motion to stay is also not immediately appealable.

Because the Sixth Circuit does not have jurisdiction over Defendants Barbara and Larry Bates' appeal, this Court is not divested of jurisdiction in this matter. Accordingly, the Court may consider the instant motions.

### B. Negative Inference Based On Assertion of Fifth Amendment

Plaintiffs argue that the Court should draw negative inferences from Larry, Barbara, Robert, and Charles Bates' assertion of the Fifth Amendment protections at the attachment proceedings. (ECF No. 477 at 7-8.)

While the Court is permitted to draw negative inferences from a witness's Fifth Amendment assertion in a civil case, the Court declines to do so in the instant matter. The Court must carefully weigh Defendants' interests against self-incrimination with Plaintiffs' and the Receiver's entitlement to equitable treatment. See Graystone Nash, 25 F.3d at 192. Defendants Larry, Robert, and Charles Bates were recently indicted by a federal grand jury. (See United States v. Bates, No. 2:15-cr-

20192-SHL, ECF No. 1.) As a result, there is a heightened risk of and interest against self-incrimination. Moreover, the Receiver and Plaintiffs have had ample opportunity to investigate Defendants' homes and discover evidence to support their case for prejudgment attachment. Weighing Defendants' interests with the needs of the Receiver and Plaintiffs, the Court finds that it would be unfair to penalize Defendants for their Fifth Amendment assertions during the attachment proceedings. Accordingly, the Court DENIES Plaintiffs' Motion for Negative Inference.

### C. Maintenance of Prejudgment Attachment

With respect to each Defendant, Larry Bates, Robert Bates, and Charles Bates, there is considerable evidence that they likely engaged in a practice of concealing and fraudulently converted company property for their personal benefit. This finding is further supported by the grand jury's return of an Indictment against these three Defendants, indicating a determination of probable cause. While not determinative, the Court is cognizant of these circumstances as it considers the evidence for attachment as to each Defendant.

#### 1. Larry Bates

The Receiver and Plaintiffs present significant evidence demonstrating that Defendant Larry Bates has removed from the state or fraudulently concealed property and has left the state,

in violation of Tenn. Code Ann. § 29-6-101. At the hearings on August 12, 2015 ("August 12 hearing"), and September 2, 2015 ("September 2 hearing"), the Receiver and Plaintiffs presented evidence that personal items have been removed from the Larry Bates home. Evidence was also presented of the presence of numerous firearms in the home. Additionally, the Receiver and Plaintiffs observed that, although there was evidence that Larry Bates had purchased several vehicles in 2009 and 2010, only one of these vehicles could be located. When the Receiver and Plaintiffs went to Larry Bates' home to execute the emergency attachment, Larry Bates arrived at the home in a rental vehicle. The Receiver and Plaintiffs argue that these actions indicate that these vehicles were likely sold or otherwise concealed.

The Receiver, John Ryder, also testified that when he visited the property eighteen months earlier, he had observed three freezers filled with hundreds of packages of ground meat. The photographs taken at the property following the emergency attachment, however, showed only a handful of packages of meat in the freezers. In his FAMC literature, Larry Bates had recommended storing precious coins in PVC tubes, inserting these tubes in ground meat, and freezing it. Given the very material change in the quantity of the meat, the improbability that a family of two could have consumed that much ground beef in eighteen months, and the fact that approximately six thousand

Swiss francs known to be purchased by Larry Bates could not be located, Mr. Ryder testified that he believed it was probable that that Larry Bates had concealed coins in the meat.

Additionally, the Receiver and Plaintiffs found FAMC corporate records at Larry Bates' home, despite Larry Bates' prior representations that he had turned over all corporate documents. Despite Larry Bates' testimony that all coins had been turned over to the Receiver, the Receiver and Plaintiffs discovered an empty coin container outside the guest home on Larry Bates' property and a small box of silver eagle coins, along with various other coins, inside an FAMC coin bag in Larry Bates' home office. The Receiver and Plaintiffs also presented documents written by Larry Bates wherein he repeatedly discussed provisions and funds being on the way. The Receiver and Plaintiffs produced a gas station receipt showing that Larry Bates has left the county and has crossed state lines since his indictment.

Following the September 2 hearing, the Receiver and Plaintiff submitted the declaration of John Pikramenos. Mr. Pikramenos was retained by the Receiver to manage Larry Bates' Winwood Farms property after the attachment. (Pikramenos Decl., ECF No. 501-1.) Mr. Pikramenos stated under oath that he found additional weapons in Larry Bates' home office, as well as "a box containing 33 Double Eagle Mini 14K gold coins."

(Pikramenos Decl. ¶¶ 6, 7.)  He noted that, "[i]n addition, the box contained, what appeared to be, empty sleeves or envelopes for larger size coins." (Pikramenos Decl. ¶ 7.)

In response, Defendant Larry Bates argues that "none of the eight grounds for attachment are applicable" and that "John Ryder and plaintiffs' attorneys and receiver's attorneys continue to advance their false narrative in an attempt to defraud the Court." (ECF No. 497 ¶¶ 2, 3.)  Larry Bates further challenges the truthfulness of several of the assertions in Mr. Ryder's affidavit.  (Id. ¶¶ 3-14.)

Although Mr. Bates disputes the substance of Mr. Ryder's affidavit, he does not challenge the evidence presented at the August 12 and September 2 hearings.  The requirement of Tenn. Code Ann. § 29-6-113 is modest.  The plaintiff's agent must merely make a written statement under oath, stating "the nature and amount of the debt or demand, and that it is a just claim; or if the action is for a tort, that the damages sued for are justly due the plaintiff; and, also, that one(1) or more of the causes enumerated in § 29-6-101 exists." Tenn. Code Ann. § 29-6-113.  Despite Larry Bates' assertions that the affidavit is false, the affidavit does satisfy the requirements of Tenn. Code Ann. § 29-6-113.  See Phipps v. Burnett, 33 S.W. 925, 926 (Tenn. 1896) (finding sufficient an affidavit alleging that defendant fraudulently disposed of, or was about to fraudulently dispose

of property "to the best of [the affiant's] knowledge and belief").

Moreover, the uncontroverted evidence presented at the hearings shows that Larry Bates had property such as corporate documents and precious coins in his possession, despite his testimony that said property had been turned over to the Receiver. The evidence further shows that property such as vehicles and other precious coins known to be owned by Larry Bates could not be located on any of his real properties. The evidence that a significant quantity of meat, which had previously been stored in the freezers on Larry Bates' property, was no longer present, combined with the evidence of empty drawers, an empty jewelry box, and paintings that had been removed from the walls, supports an inference that Larry Bates had moved or was in the process of moving his person and property out of state, had concealed or was about to conceal property, or had fraudulently disposed or was about to fraudulently dispose of property.

Considering all the evidence together, the Receiver and Plaintiffs have presented sufficient evidence to maintain attachment under grounds two, four, five, and six of Tenn. Code Ann. § 29-6-101. Accordingly, the Court GRANTS Plaintiffs' Motion to Continue the Prejudgment Attachment and Preserve the Status Quo (ECF No. 459) as to Larry Bates.

## 2. Robert Bates

With respect to Robert Bates, the Receiver and Plaintiffs inspected the property rented by him in Collierville, Tennessee, as well as the property owned by him in Counce, Tennessee. At the rental property, the Receiver and Plaintiffs found boxes of company documents in the garage. At Robert Bates' Counce property, the Receiver and Plaintiffs found two bulldozers known to have been purchased with company assets. They also found an invoice from Sportsman's Boat Storage and a letter dated May 12, 2015, signed by Robert Bates to an individual at Sportsman's Boat Storage, which indicated that payments had been made after the Court's injunction was in place.[3]

At the August 12 hearing, Attorney Joe Barton testified that his firm had represented Robert Bates in a separate action. Mr. Barton testified that his firm had procured a lien to enforce a judgment against Robert Bates. On July 9, 2015, Mr. Barton seized a number of items from Robert Bates, including eight weapons and a Ford F150, which he later returned to Robert Bates. On that date, Mr. Barton also observed, but did not

---

[3] At the August 12 hearing and in briefing, the Receiver and Plaintiffs refer to the failure of Robert Bates to turn over his boat in relation to the prejudgment attachment. At the September 2 hearing, however, Robert Bates' counsel provided the Receiver and Plaintiffs with contact information for and the location of the boat. Nothing additional has been submitted regarding the boat. It therefore appears that that property has now been located and attached. Plaintiffs' Motion for Contempt and Sanctions as to Robert Bates (ECF No. 476) is therefore denied as moot.

seize, an item labeled "Bob's Box – Do Not Touch," which contained precious coins and freeze-dried food.

Additionally, Robert Bates' personal vehicle was not located at either property. The record reflects that Larry Bates, after transferring funds from FAMC to a brokerage account and then to a personal bank account at Bancorp South, had given Robert Bates $15,000.00 on June 20, 2009, to purchase a vehicle. At the September 2 hearing, Joi Vongphrachanh, a friend of Robert Bates' wife, Kinsey Bates, testified that she had had lunch with Kinsey Bates and Barbara Bates on August 6, 2015, the day that the grand jury returned its Indictment. Ms. Vongphrachanh testified that while they were waiting to be served, Kinsey Bates stepped out to take a phone call and came back to the table in tears. Later that day, Kinsey Bates called Ms. Vongphrachanh to apologize for crying and asked if they could meet. When they met, Kinsey Bates asked Ms. Vongphrachanh if Kinsey Bates could leave her vehicle, a silver Mercedes SUV, with Ms. Vongphrachanh for a few days. Ms. Vongphrachanh did not have room in her garage, but informed Kinsey Bates that she could leave the vehicle at Ms. Vongphrachanh's son's father's home in Byhalia, Mississippi. Kinsey Bates, accompanied by Robert Bates who was driving a black truck, subsequently dropped off her vehicle in Byhalia, Mississippi. On August 16, 2015, Kinsey Bates returned to pick up the vehicle and was again

accompanied with Robert Bates in the same black truck. The Receiver and Plaintiffs assert that since the attachment, Robert Bates has been driving a red Chevrolet Cruze registered to Hertz Rental Car. (ECF No. 459 at 7 n.5.)

Defendant Robert Bates argues that the Receiver and Plaintiffs' proof from the August 12, 2015, hearing was inconclusive, and that re-adoption does not make it conclusive. (ECF No. 474 at 8.) Robert Bates further argues that the two bulldozers located on his Counce, Tennessee property belong to FAMC or Larry Bates and have been located on that property for an extended period of time. (Id.) Additionally, Robert Bates argues that the vehicles owned by Robert Bates and Kinsey Bates were in service at the time of the seizure and the Receiver had previously stated that he did not want them. (Id.)

Defendant Robert Bates misunderstands the purpose of the August 12, 2015, hearing. The Court granted the emergency motions for writ of prejudgment attachment because it found such action was warranted by the Indictment. The purpose of the August 12, 2015, hearing was to provide the Receiver and Plaintiffs an opportunity to present evidence regarding the merits of the attachment and to provide Defendants an opportunity to argue against the attachment. The Receiver and Plaintiffs represented that the evidence submitted at the August 12, 2015, hearing was incomplete because they had not had time

to perform a complete inventory and inspection of each property. Accordingly, the Court set a second hearing on the prejudgment attachment for September 2, 2015. At that hearing, the Receiver and Plaintiffs presented additional evidence for maintaining the prejudgment attachment and readopted the evidence presented at the August hearing. Specifically, the Receiver and Plaintiffs presented the testimony of Ms. Vongphrachanh, which demonstrated that, immediately following the Indictment, Robert Bates had assisted Kinsey Bates in concealing her vehicle out of state.

Additionally, although the Receiver indicated that he was not interested in Robert Bates' vehicle, the fact that the Receiver and Plaintiffs were unable to locate the vehicle and Robert Bates was observed to be driving a rental car, while Ms. Vongphrachanh observed Robert Bates accompanying Kinsey Bates in his personal vehicle, is concerning to the Court. This evidence, coupled with the uncontroverted evidence that Robert Bates assisted Kinsey Bates in concealing her vehicle out of state and the evidence of Robert Bates' fraudulent conduct in the operation of FAMC, evinces that Robert Bates removed his person and property out of the state, concealed, or absconded concealing his property. See Bennett v. Avant, 34 Tenn. 152, 152 (1852) ("To abscond, in a legal sense, means to hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process."). This is sufficient to demonstrate

grounds two, four, five, and six of Tenn. Code Ann. § 29-6-101. Accordingly, the Court GRANTS Plaintiffs' Motion to Continue the Prejudgment Attachment and Preserve the Status Quo (ECF No. 459) as to Robert Bates. The Court DENIES Defendant Robert Bates' Motion for Relief from Attachment (ECF No. 474).

### 3. Charles Bates

With respect to Charles Bates, the Receiver and Plaintiffs present evidence that Charles Bates' home contained bullets of several different calibers, a rifle scope, and four holsters, but only one weapon. The Receiver and Plaintiffs argue that this indicates that Charles Bates had removed the weapons which fit the various bullets. The Receiver and Plaintiffs also present evidence that a set of safe keys were found on the property, but no safe, and a set of keys fitting a keypad safe, although no keypad safe was located on the property. The Receiver and Plaintiffs note that a box for an iPad, but no iPad, was located on the property. Additionally, the Receiver and Plaintiffs observed dangling electronic wires from the corner of the home, but no cameras or electronic surveillance system was found inside the home. In the garage, the Receiver and Plaintiffs found an empty area where a deep freezer had previously been located, but no deep freezer was located on the property. Moreover, the Receiver and Plaintiffs noted that no precious metals were found on the property, although Charles

Bates had previously testified that one-third of his total assets were in precious metals. No vehicles were found on Charles Bates' property. The Receiver and Plaintiffs argue that the evidence demonstrates that Charles Bates has acted to conceal or dispose of weapons, surveillance equipment, safes, a deep freezer, electronics, precious metals, and other assets.

At the September 2 hearing, the Receiver and Plaintiffs also presented the testimony of Phillip Hollingsworth, a locksmith, who testified about the two sets of safe keys found in Charles Bates' home. In response to defense counsel's questions regarding possible alternative uses for these keys, Mr. Hollingsworth testified that while the first key technically could be used for a credenza, the hardware was not built for that purpose, it would not be secure, and its use with the furniture would be damaging to the furniture. With respect to the second set of keys, Mr. Hollingsworth testified that the keychain held two different tubular keys, one of which is associated with First Alert safes and the other which is associated with Sentry safes. Mr. Hollingsworth explained that tubular locks are not commonly used for commercial locks, but that a cam lock could be used for a control box or other small storage door container.

In his legal memorandum, Charles Bates addresses each of these in turn. This document, however, was not submitted under

oath.    Accordingly,  the  Court  cannot  consider  Charles  Bates'

arguments  as  evidence.    See  Wilson v. Allstate Ins. Co., 785

F.2d  311,  at  *2  (6th  Cir.  1986)  ("it  is  well-settled  that  a

party will not be permitted to use the fifth amendment as both a

sword  and  a  shield").    Instead,  the  Court  finds  that  the

Receiver  and  Plaintiffs  have  shown  that  several  items  discovered

in  Charles  Bates'  home  were  missing  a  necessary  counterpart.

For  example,  there  were  bullets,  but  no  guns  in  which  they  fit.

There  were  safe  keys,  but  no  safe  or  other  lock  in  which  they

fit.    Moreover,  the  record  reflects  that  a  significant  portion

of  Charles  Bates'  assets  were  held  in  precious  metals,  but  no

precious  metals  were  found  on  the  property.    Viewing  this

evidence as a whole, as well as the evidence that Charles Bates

has  previously  engaged  in  fraudulent  behavior,  the  Court  finds

that  Plaintiffs  have  demonstrated  that  grounds  four,  five,  and

six  of  the  Tennessee  attachment  statute  have  been  met  as  to

Charles Bates.

Accordingly,  the  Court  GRANTS  Plaintiffs'  Motion  to

Continue  the  Prejudgment  Attachment  and  Preserve  the  Status  Quo

(ECF  No.  459)  as  to  Charles  Bates.    The  Court  DENIES  Defendant

Charles Bates' Motion for Relief from Attachment (ECF No. 474).

**D.    Requirements of Affidavit and Bond**

In  Defendants  Larry  and  Barbara  Bates'  Response  to  Joint

Notice  of  Filing  of  Affidavit  in  Support  of  Prejudgment

Attachment and Motion to Nullify Prejudgment Attachment Orders for Non-Compliance with Tenn. Code Ann. § 29-6-113 and Non-Compliance with Tenn. Code Ann. § 29-6-115 Requiring Sufficient Bond of Plaintiffs Payable to the Defendants and Motion for Sanctions, Larry Bates argues that the Court's earlier orders granting writs of prejudgment attachment should be nullified because the Receiver and Plaintiffs failed to timely submit an affidavit or execute a bond in conjunction with their motions for prejudgment attachment. (ECF No. 497.) Larry Bates seeks sanctions against the Receiver and Plaintiffs, and their respective attorneys, for their "egregious and tortious conduct . . . in [the] act of perjury and suborning perjury." (Id. at 8.)

With respect to the requirement of Tenn. Code Ann. § 29-6-113, Mr. Ryder testified under oath at the August 12, 2015, hearing regarding the prejudgment attachment. The Court finds that this was sufficient to satisfy the sworn testimony requirement on Tenn. Code Ann. § 29-6-113. On October 1, 2015, the Receiver and Plaintiffs filed Mr. Ryder's signed affidavit, which cured any technical defect in writing and brought them into full compliance with Tenn. Code Ann. § 29-6-101. Accordingly, all requirements for attachment have been met, and attachment is appropriate.

With respect to the requirement of Tenn. Code Ann. § 29-6-115, the statute provides that in order to obtain prejudgment attachment, the plaintiff or his agent shall execute a bond with sufficient security. Tenn. Code Ann. § 29-6-116 provides guidance on the amount of the bond to be required. This section provides that "[w]hen the property to be attached is real estate, the issuing officer shall only require a bond in penalty sufficient to cover all such costs and damages as same may be estimated by the issuing officer." Tenn. Code Ann. § 29-6-116. Rather than require the Receiver and Plaintiffs to execute a bond payable to Defendants, who have failed to make mortgage payments, insurance payments, and payments to the alarm company, and to pay taxes, the Court has required the Receiver and Plaintiffs to cover these costs directly. The personal property subject to the attachment is found in improvements located on the real property or is intimately associated with use and function of the real property as a farm; therefore, a separate attachment for the equipment and other movable property is not required. Nevertheless, the Receiver and Plaintiffs' previously executed bond of $100,000 in conjunction with the Temporary Restraining Order is sufficient surety to protect Defendants. Accordingly, the Receiver and Plaintiffs have fully complied with the requirements of Tenn. Code Ann. § 29-6-115.

With respect to Larry and Barbara Bates' assertion that Mr. Ryder committed perjury and that his counsel and Plaintiffs' counsel suborned perjury, Larry and Barbara Bates submit no evidence aside from their own statements. Accordingly, there is insufficient evidence to find that Mr. Ryder or counsel engaged in bad faith conduct, willful disobedience, egregious conduct, or to find any other basis for the imposition of sanctions.

For these reasons, Defendants Larry and Barbara Bates' Motion to Nullify Prejudgment Attachment Orders for Non-Compliance with Tenn. Code Ann. § 29-6-113 and Non-Compliance with Tenn. Code Ann. § 29-6-115 Requiring Sufficient Bond of Plaintiffs Payable to the Defendants and Motion for Sanctions are DENIED.

## IV. CONCLUSION

For these reasons, the Court GRANTS Plaintiffs' Motion to Continue the Prejudgment Attachment and Preserve the Status Quo and DENIES Defendants Charles and Robert Bates' Motion for Relief from Attachment. Additionally, the Court DENIES Plaintiffs' Motion for Negative Inference to Attach to All Declarations of the Fifth Amendment Made in These Proceedings. The Court DENIES Defendants Larry and Barbara Bates' Motion to Nullify Prejudgment Attachment and Motion for Sanctions.

It is so ORDERED, this the 20th day of October, 2015.


                                    /s/ Jon P. McCalla
                                    _____
                                    JON P. McCALLA
                                    U.S. DISTRICT COURT JUDGE