```
IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF TENNESSEE
              WESTERN DIVISION
```

| | |
|---|---|
| DAMIAN ORLOWSKI, et al.,<br><br>    Plaintiffs, on behalf of<br>    themselves and all others<br>    similarly situated,<br><br>v.<br><br>LARRY BATES, et al.,<br>    Defendants. | No. 2:11-cv-01396-JPM-cgc |

**ORDER DENYING DEFENDANT STANDLEY'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Cecilia "Cindy" K. Standley's Motion for Summary Judgment, filed July 27, 2015. (ECF No. 431.) On November 17, 2015, Plaintiffs filed a Response. (ECF No. 540.) Defendant Standley filed a reply brief on November 25, 2015. (ECF No. 546.) The Court held a hearing on the motion on December 22, 2015. (Min. Entry, ECF No. 560.) For the following reasons, Defendant Standley's Motion for Summary Judgment is DENIED.

**I.    BACKGROUND**

    **A.    Factual Background**

This case involves allegations of a complex, large-scale scheme to defraud hundreds of people over the course of many years. (See 3d Am. Compl., ECF No. 375.) The Court has summarized the facts of this case more fully in previous Orders. (See ECF Nos. 416, 543.) The following facts are pertinent to

Plaintiffs' conversion claim against Defendant Standley, which is at issue in the instant motion.

In 1983, Defendant Larry Bates established First American Monetary Consultants ("FAMC")[1] to sell precious metals. (Charles Larry Bates ("Larry Bates") Dep. 19:4-15, 40:2-7, ECF No. 183; Barbara Bates Dep. 14:15-21, ECF No. 87-1.) FAMC had offices in Tennessee and Colorado. (Robert Bates Dep. 56:25-57:2, ECF No. 89-1.)

Standley was employed by FAMC from August 1992 until November 2013. (Standley Dep. 16:2-4, 17:16-18, 23:6-16, ECF No. 376-1.) Between 2004 and November 2013, Standley was FAMC's Vice President of Administration and managed the Colorado office. (3d Am. Compl. ¶¶ 28, 47, ECF No. 375; Answer ¶¶ 28, 47, ECF No. 419; Standley Dep. 16:2-18, 16:25-17:5, ECF No. 376-1.) Standley was the only officer of FAMC who lived in Colorado. (Standley Dep. 163:11-14, ECF No. 376-1.) As Vice President, Standley's responsibilities included depositing customer checks for the purchase of precious metals. (Larry Bates Dep. 246:7-15, ECF No. 183; Am. Compl. ¶ 47, ECF No. 375; Answer ¶ 47, ECF No. 419.) Standley also transacted business with clients, answered questions at the Colorado office

---

[1] First American Monetary Consultants was comprised of two separate entities: FAMC, Incorporated and FAMC PM, LLC (together "FAMC"). (See Larry Bates Dep. 20:6-13, 44:2-9, 155:5-15, ECF No. 183.) Most precious metals were sold through FAMC, Inc., but metals to Tennessee customers were sold through FAMC PM, LLC to avoid state sales tax. (Larry Bates Dep. 44:10-45:8, ECF No. 183.)

concerning orders, and was the only employee in Colorado with the key to FAMC's safe. (Am. Compl. ¶ 47, ECF No. 375; Answer ¶ 47, ECF No. 419; Standley Dep. 43:7-16, 43:24-44:5, ECF No. 376-1.) Additionally, from 2008 until 2013, Standley was in charge of FAMC's payroll. (Standley Dep. 44:15-24, ECF No. 376-1.)

Only Standley, Defendant Barbara Bates, and Larry Bates were authorized to write checks and wire funds to and from FAMC bank accounts. (Id. 53:17-21; see also Barbara Bates Dep. 53:11-20, ECF No. 87-1; Larry Bates Dep. 92:11-17, 220:19-221:7, ECF No. 183.) Standley testified that she also kept a ledger on each bank account to monitor the incoming and outgoing transactions. (Standley Dep. 53:25-54:6, ECF No. 376-1.) In addition to managing the bank accounts, Standley also managed the credit card processing transactions at FAMC. (Id. 160:24-161:2.) The court-appointed Receiver, John Ryder, testified, and the FAMC American Express statements reflect, that Standley was authorized to use the FAMC corporate credit card. (Ryder Dep. 6:4-7, 105:12-106:8, ECF No. 433-1, Butler Dep. Exs., ECF Nos. 435-2 to 437-2.)

After the Receiver for FAMC was appointed in October 2013, he retained Rhett Butler, a certified public accountant and certified fraud examiner, to examine the company's financial records. (Ryder Dep. 6:4-9, 11:4-14, ECF No. 433-1; see also

Butler Report at PageID 5843, ECF No. 426-5.) Among other tasks, Butler was asked to identify transactions between FAMC and members of the Bates family as well as between FAMC and Standley. (Butler Dep. 11:20-12:14, 139:6-9, ECF No. 435-1; Statement of Undisputed Facts ("SUF") ¶ 2, ECF No. 432; Response to SUF ¶ 2, ECF No. 541; see also Butler Report at PageID 5843, Ex. H at PageID 5860, ECF No. 426-5.)

With respect to Standley, Butler identified $15,897.00 in charges on FAMC's American Express and Citi Bank credit cards that appeared to be "potentially non-business related." (Butler Dep. 23:12-18, ECF No. 435-1; Butler Report, Ex. H at PageID 5860, ECF No. 426-5; SUF ¶ 8, ECF No. 432; Response to SUF ¶ 8, ECF No. 541.) Butler did not have expense reports or other supporting documents to support his findings and, therefore, based his opinion on his background as a certified public accountant and certified fraud experience, his experience performing audits, and his education. (Butler Dep. 15:12-18:10, 19:7-13, 140:10-25, 143:3-19, 144:8-18, 147:11-19, 155:7-13, ECF No. 435-1.) Because Butler did not have itemized receipts or records from these purchases, however, he was unable to form an opinion with greater certainty. (Butler Dep. 18:11-20:6, 25, 32, 155:7-13, 158:25-159:25, ECF No. 435-1; SUF ¶ 6, ECF No. 432; Response to SUF ¶ 8, ECF No. 541.)

**B. Procedural Background**

Plaintiffs filed the Complaint in this action on December 28, 2011. (Compl., ECF No. 1.) Plaintiffs then filed their First Amended Complaint on August 13, 2012 (ECF No. 53), and their Second Amended Complaint on March 14, 2014 (ECF No. 224).

On December 17, 2013, Plaintiffs moved for class certification. (ECF No. 182.) The Court held a hearing on the motion for class certification on April 29, 2014. (Min. Entry, ECF No. 285.) The Court granted Plaintiffs' motion for class certification on April 30, 2014. (ECF Nos. 289, 290.)

On May 16, 2014, Standley filed a Motion to Dismiss. (ECF No. 300.) Plaintiffs responded in opposition on June 27, 2014. (ECF No. 321.) The Court held a hearing on the Motion to Dismiss on July 10, 2014 (Min. Entry, ECF No. 336), and ordered the parties to file a status report after Standley's deposition (ECF No. 334). On September 29, 2014, Plaintiffs filed a status report, requesting leave to amend their complaint to "stat[e] the allegations of wrongdoing by Defendant Standley with more specificity, and . . . [to] delet[e] the breach of contract causes of action as to her." (ECF No. 364 at 2.)[2] On October 6, 2014, the Court granted Plaintiffs' request for leave to amend their complaint as to Defendant Standley and granted Standley

---

[2] The status report filed on September 29, 2014, neglected to include a signature page. (See ECF Nos. 364, 367.) Plaintiffs corrected this deficiency by re-filing the status report with a signature page on October 1, 2014. (ECF No. 368.)

leave to respond and to amend her motion to dismiss. (ECF No. 370.)

On October 20, 2014, Plaintiffs filed their Third Amended Complaint. (ECF No. 375.) Defendant filed a Supplemental Memorandum of Facts and Law in Support of her Motion to Dismiss on November 6, 2014. (ECF No. 378.) On March 31, 2015, the Court entered an Order denying Standley's Motion to Dismiss as to the conversion claim and granting the Motion to Dismiss as to all other claims. (ECF No. 416.)

On July 27, 2015, Standley filed a Motion for Summary Judgment as to the remaining conversion claim. (ECF No. 431.) Plaintiffs filed a Response in Opposition on November 17, 2015. (ECF No. 541.) Standley filed a reply brief on November 25, 2015. (ECF No. 546.) The Court held a hearing on the instant motion on December 22, 2015. (Min. Entry, ECF No. 560.)

## II. LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 448-49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper."  Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v. AT & T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

"To show that a fact is, or is not, genuinely disputed, both parties are required to either 'cite[] to particular parts of materials in the record' or 'show[] that the materials cited

7

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'"  Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex Corp., 477 U.S. at 325)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

"The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'"  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008)).  "'[J]udges are not like pigs, hunting for truffles' that might be buried in the record."  Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) (alteration in original) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson, 477 U.S. at 251–52). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 251).

**III. ANALYSIS**

**A.  Admissibility of Evidence**

As an initial matter, the Court finds that it may consider the substance of the handwritten notes attached to Standley's affidavit (ECF No. 432-18), but that it may not consider the handwritten ledger attached to Plaintiffs' Response (ECF No. 541-1) for purposes of summary judgment.

"It is well established that a court may not consider hearsay when deciding a summary judgment motion." Tranter v. Orick, 460 F. App'x 513, 514 (6th Cir. 2012) (per curiam). In Bailey v. Floyd County Board of Education, the Sixth Circuit explained:

> Rule 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact. Examples of such evidence include admissible documents or attested testimony, such as that found in affidavits or depositions. The proffered evidence need not be in admissible <u>form</u>, but its <u>content</u> must be admissible. For instance, deposition testimony will assist a plaintiff in surviving a motion for summary judgment, even if the deposition itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact.

106 F.3d 135, 145 (6th Cir. 1997) (citations omitted). The Sixth Circuit has also repeatedly emphasized "that unauthenticated documents do not meet the requirements of Rule 56(e)." <u>Alexander v. CareSource</u>, 576 F.3d 551, 558-59 (6th Cir. 2009).

Plaintiffs have not properly authenticated the handwritten ledger through an affidavit or other means. <u>See</u> <u>United States v. Rhodes</u>, 788 F. Supp. 339, 342 (E.D. Mich. 1992) (finding that "there is no affidavit authenticating the [handwritten] notations, therefore, the notations do not come under the business record exception to the hearsay rule contained in Fed. R. Evid. 803(6)"). Accordingly, the Court finds that it may not consider the handwritten ledger for purposes of this motion.

On the other hand, Standley has incorporated her handwritten notes into her sworn affidavit. (<u>See</u> Standley Aff. ¶ 5, ECF No. 432-18.) She has further sworn under oath that to the best of her recollection, none of the expenses she reviewed

10

from the 2007-2013 American Express statements were personal in nature. (Id. ¶ 7.) To the extent that the substance of these notes is based on Standley's personal knowledge, and she could testify to these facts at trial, the Court will consider the notes. Standley has put forth no basis for the admissibility of the document itself, however, and accordingly, the Court makes no finding on the admissibility of this document for trial purposes. Nevertheless, the information contained in Standley's handwritten notes merely supports the statements made in Standley's affidavit and has minimal independent effect.

**B.    Summary Judgment**

Defendant argues that she is entitled to summary judgment because she can be held liable only for her own tortious conduct and not her employers' and because there is no evidence that she appropriated customer monies to her own use and benefit. (ECF No. 431-1 at 2-5.) Defendant further argues that she did not have "control" over FAMC funds to show the exercise of "dominion" for the purposes of common-law conversion. (Id. at 5-7.) Defendant also argues that Butler's opinion that certain charges were "potentially non-business related" is not admissible under Rule 702, and moreover, that her (Standley's) affidavit and explanation of the charges negate an essential element of Plaintiffs' case. (Id. at 7-10.)

Plaintiffs identify numerous facts that they believe preclude summary judgment. (ECF No. 540 at 3-4.) Plaintiffs further argue that Standley's affidavit does not negate Butler's testimony that the charges were potentially non-business related. (Id. at 7.)

"A conversion, in the sense of the law of trover, is the appropriation of the thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." Mammoth Cave Prod. Credit Ass'n v. Oldham, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977) (quoting Barger v. Webb, 391 S.W.2d 664, 665 (Tenn. 1965)). "To be liable for conversion, the defendant 'need only have an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiff's rights, and do so.'" Hanna v. Sheflin, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008) (quoting Mammoth, 569 S.W.2d at 836).

> Property may be converted in three ways. First, a person may dispossess another of tangible personalty. Second, a person may dispossess another of tangible property through the active use of an agent. Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for "receiving a chattel."

PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (citations omitted). In general, conversion involves

12

tangible property, but "[m]isappropriated funds placed in the custody of another for a definite purpose may be subject to a suit for conversion." Id. at 553-54 (quoting 90 C.J.S. Trover and Conversion § 16 (2012)). Specifically, "where the defendant is under an obligation to deliver specific money to the plaintiff and fails or refuses to do so, or when wrongful possession of it has been obtained by the defendant, there is a conversion for which trover lies." Id. at 553 (quoting C.J.S. Trover and Conversion § 16 (2012)).

### 1. Standley's Personal Liability and Dominion Over Customer Funds

The Court agrees with Defendant Standley that she can be held responsible only for her own tortious conduct. See Restatement (Third) of Agency § 7.01. Accordingly, she may only be liable to the extent that she exercised dominion over customer funds and appropriated them for her own benefit, rather than merely for the benefit of FAMC.

The Court disagrees, however, with Standley's contention that she did not have dominion or control over customer funds. A review of the record reveals that Standley was a signatory on multiple FAMC bank accounts and was authorized to use an FAMC credit card. There is little, if any, testimony regarding the supervision of Standley's credit card use. Because Standley submits no evidence, identifies no facts in her Statement of

Undisputed Facts, and fails to cite to facts in the record in her memorandum in support of her contention that she lacked "dominion," Defendant fails to satisfy her burden to demonstrate the absence of a dispute of material fact on this point.[3]

### 2. Appropriation for Personal Benefit

Moreover, the Court finds that a dispute of material fact exists as to whether Standley appropriated the funds for her own benefit. First, Defendant argues that Butler's testimony and report, which Plaintiffs rely on to contradict Standley's affidavit and create a dispute of material fact, are inadmissible under Rule 702 of the Federal Rules of Evidence. The Court disagrees with Defendant and finds that Mr. Butler's report and testimony are admissible under Rule 702.

Rule 702 provides that an expert opinion is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

---

[3] Defendant cites to Kentuckiana Healthcare, Inc. v. Fourth Street Solutions, LLC, 517 F.3d 446 (7th Cir. 2008), in support of her contention that signatory authority is not equivalent to "dominion" for the purposes of common law conversion. (See ECF No. 431-1 at 5-6.) The Court first notes that this is a Seventh Circuit case that applies Indiana law and therefore has no binding effect on this Court. Nevertheless, Kentuckiana is easily distinguishable from the instant matter. In that case, the signatory agents merely failed to reimburse the plaintiff for funds paid to their employer. See 517 F.3d at 449. In the instant matter, Plaintiffs allege that Standley not only maintained their property in FAMC accounts, but also used that money for her personal expenses.
Moreover, if Standley was, in fact, able to charge personal expenses to FAMC's corporate credit card without oversight or repercussion, she almost certainly had "dominion" over the customer funds. Thus, had Defendant properly put this element of conversion in issue, the same proof that raises a dispute of material fact as to whether Standley's charges were business or personal, see infra Part III.B.2, would also raise a dispute as to whether Standley had dominion over the customer funds.

> understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony of the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"[T]he fact that an expert 'does not use absolute terms but rather couches the opinions in terms of "can" or "may" does not render it speculative or unreliable.'" In re Heparin Prods. Liab. Litig., 803 F. Supp. 2d 712, 745 (N.D. Ohio 2011) (quoting In re Trasylol Prods. Liab. Litig., No. 08-MD-01928, 2010 WL 1489730, at *8 (S.D. Fla. Mar. 19, 2010)). "Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" Jahn v. Equine Servs., PSC, 233 F.3d 382, 388 (6th Cir. 2000) (alteration in original) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993)). "Daubert and Rule 702 require only that the expert testimony be derived from inferences based on a scientific method and that those inferences be derived from the facts of the case at hand, not that they know answers to all the questions a case presents . . . ." Jahn, 233 F.3d at 390 (citation omitted).

Butler testified that his opinion was based on his education, knowledge, and experience as a certified public accountant and certified fraud examiner. (Butler Dep. 15:12-18:10, 140:10-25, 143:3-19, 147:11-19, ECF No. 435-1.) He further explained that he looked at all of FAMC's transactions in aggregate and evaluated which purchases were typically made by writing checks as opposed to using a credit card. (Id. at 13:8-14:15, 102:18-104:9.) Although Butler was limited by the lack of invoices and receipts, his opinions were based on the documentation available to him and on a methodology derived from his technical knowledge and experience as a certified public accountant and certified fraud examiner. Accordingly, the Court finds that Butler's opinions are admissible under Rule 702. The lack of information available to Butler in making these determinations is a matter for the jury to weigh in evaluating his testimony.

Second, Defendant argues that, even if admissible, Butler's testimony is insufficient to raise a dispute of material fact as to whether the charges by Standley were for business or personal expenses. The Court disagrees.

In her affidavit and explanation of charges, Standley states under oath that each charge identified by Mr. Butler as potentially non-business related was, in fact, business related. (See ECF No. 432-18.) Standley's statements, however, provide

16

minimal detail as to the specific circumstances of each charge. (See id.) She merely identifies the category of product that each vendor sells and asserts that the charge was on behalf of FAMC. (See id.)

For example, Standley asserts that charges from USPS and other vendors represent shipping and/or postage charges by FAMC. (Standley Aff. ¶ 9, ECF No. 432-18.) Similarly, she asserts that charges from restaurants including Applebee's and Cracker Barrel represent company meals for office staff and/or clients. (Id. ¶ 25.) Standley fails, however, to provide additional detail as to the content or recipient of the mailed packages or the employees or clients who attended these meals.

In response to Standley's affidavit, Plaintiffs refer to Butler's report and deposition testimony, in which he opines that certain charges made by Standley were potentially non-business related. (See ECF No. 540 at 3-4, 7-8.) Butler's opinion that Standley's charges to FAMC's credit card were potentially non-business related is sufficient to refute Standley's largely skeletal assertions that the charges were for business purposes. See Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) (discounting plaintiff's conclusory assertions, supported only by his own conclusory testimony). Thus, Plaintiffs sufficiently raise a dispute of material fact to preclude summary judgment.

The Court further notes that Standley, as the credit card user and manager of the Colorado office, would have had the opportunity to obtain receipts from and maintain records of each transaction. Although there is no evidence that Standley was under an obligation to do so at the time of the credit card transactions, allowing her to benefit from her failure to maintain detailed records would perversely reward doubly-dishonest individuals who make personal charges on a company credit card and then neglect to keep receipts.

The question of whether these charges by Standley were, in fact, for business or personal expenses should be determined by a jury. Accordingly, summary judgment is inappropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant Standley's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED this the 25th of January, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE